WESTERN UNION TELEGRAPH COMPANY v. C. H. WISDOM.

No. 7571.

**1. Suggestion of Delay—Damages for Mental Anguish.**—See facts in a suit for damages for mental anguish caused plaintiff by the negligent failure of the defendant telegraph company to deliver a message. No excuse was shown for the failure. The judgment was for $875. The judgment was affirmed with damages.

**2. Contributory Negligence.**— The plaintiff made arrangements by which he was to be informed by telegraph of any change in the condition of his

sick infant child. The child becoming worse, a dispatch was delivered to the agent of the telegraph company, to be forwarded to plaintiff. Charges were paid and message repeated. The importance of the message was explained. The message was not delivered. The agent of plaintiff who sent the message took no other means to communicate with him. *Held*, such failure was not contributory negligence. Both plaintiff and his agent had the right to rely upon the presumption that the telegraph company would deliver the dispatch with reasonable promptness.

APPEAL from Fannin. Tried below before Hon. E. D. McCLELLAN.

*Stemmons & Field*, for appellant.

*Baldwin & Duncan*, for appellee, suggested delay.

COLLARD, JUDGE, *Section A.*—Suit by C. H. Wisdom, appellee, against the Western Union Telegraph Company, for damages because of mental anguish, etc., resulting from the failure of the company to deliver the following telegram:

"WHITEWRIGHT, TEXAS, 8–13, 1888.
"*To C. H. Wisdom, Bonham, Texas:*
"Your child is not expected to live; come at once.
"W. H. BLANKS."

Plaintiff, with his family, was living in the town of Bonham, Fannin County, and was keeping a restaurant. On the 11th of August, 1888, he took his wife and child to her father's, about four miles from Whitewright, in Grayson County, Texas. The child, a little over a year old, had been sick with teething and whooping cough, but was thought to be improving. Whitewright is about fourteen miles from Bonham, connected by railway, and defendant operated a telegraph line between the two towns. It is about eighteen miles from Bonham to the house of plaintiff's father-in-law. On the 12th of August plaintiff returned to his business at Bonham, leaving his wife and child at her father's; but before leaving he made arrangements with W. H. Blanks, who lived with his wife's father, to notify him by telegram in case the child became dangerously ill, furnishing him with money to pay for the sending of the message. On the 13th of the month the child became dangerously ill, and Blanks went to Whitewright and delivered to defendant's agent the telegram set out, paying the charges for the same and for repeating it, and informing the agent of the circumstances and urgency of the message. He did this as the agent of plaintiff. This was done six or eight hours before the passenger train came in from Bonham, in ample time for the message to have been sent and delivered to plaintiff in Bonham, to enable him to come on the train. Blanks remained at Whitewright, around

the depot, until the passenger train from Bonham arrived.    Wisdom did not come, and he returned home.

About 9 o'clock a. m., on the 13th of the month, plaintiff being in Bonham, called at defendant's telegraph office and asked for a telegram for himself, and was informed that none had come.    He then told the agent the circumstances about the child being sick; that a telegram might come for him, and in case it did, where to deliver it, at his place of business next door to Naum's meat market; told him that he was running a restaurant there, and could be found there at any time.    He could have been found there at any time.    The passenger train left Bonham for Whitewright between 12 and 1 o'clock on the 13th, and there was another train the same evening going the same way, about 7 o'clock, reaching Bell's about 8 o'clock, and plaintiff testified to his belief that there was a train going on to Whitewright about that time.    The telegram was not delivered, and as a result thereof plaintiff was not present at the death of his child.

On the morning of the 14th, about 8 or 9 o'clock, Blanks arrived at Bonham, having ridden horseback from where the child was, and informed plaintiff that the child was dead.    They both started and arrived at the place where the child was about 11 or 12 o'clock.    It was laid out and dressed for burial.    It had died about 1 o'clock in the morning.

The trial of the case resulted in a verdict and judgment for plaintiff for $875.

The defendant appealed, and has assigned one error, as follows:

"The court erred in overruling this special charge as asked by defendant:    That if they find and believe from the evidence that the train reaching Whitewright about 4 or 5 o'clock on the evening of the 13th day of August, 1888, was the only train which would reach Whitewright on that day, and that plaintiff's agent, Blanks, met said train and found that plaintiff was not on it, and that if Blanks had come on to Bonham that evening and notified plaintiff in time to have reached his child prior to its death, and did not do so, that plaintiff can not recover any damages herein by reason of his not being present at the death of his said child."

Defendant did not plead contributory negligence, and, if for no other reason, could not ask that the requested charge be given to the jury.    Brown v. Sullivan, 71 Texas, 470.

But if contributory negligence had been pleaded, there was nothing in the case demanding such a charge.    Blanks was only engaged to send the telegram; he fully obeyed his instructions, and was under no obligations to defendant, or any one else, to do more.    If defendant had performed its duty there would have been no injury.    Both Blanks and the plaintiff had the right to rely upon the presumption that defendant would send and deliver a telegram with reasonable dispatch.    Plaintiff was not in a position to do more than he had done, and certainly could not be held

responsible for Blanks' failure to ride to him with the information. This telegram was not delivered until after plaintiff returned from the burial of his child, and only on his applying for it, though it had been received at the Bonham office in a few minutes after it was written.

We are of opinion that the judgment should be affirmed; and believing that this appeal was taken for delay only, upon suggestion of appellee, that it should be affirmed with 10 per cent damages.

*Affirmed with damages.*

Adopted June 14, 1892.